THE STATE OF OHIO, APPELLEE *v.*
ZEISZLER, APPELLANT.

(No. 83AP-1137—Decided
July 12, 1984.)

*Michael Miller,* prosecuting attorney, and *Joyce S. Anderson,* for appellee.

*James Kura,* county public defender, and *John W. Keeling,* for appellant.

STRAUSBAUGH, J. This is an appeal by defendant-appellant, Thomas M. Zeiszler, from a judgment of the Franklin County Court of Common Pleas revoking his probation and reinstating his original sentence of one to five years in the Ohio State Reformatory at Mansfield. In consideration of its precedential value and the unique issues involved, this appeal is assigned *sua sponte* to the regular calendar pursuant to App. R. 11.1 and Local R. 4 of the Tenth Appellate District.

The record indicates that, on February 4, 1982, defendant pleaded guilty to the offense of theft, in violation of R.C. 2913.02, and was sentenced from one to five years in the Ohio State Reformatory at Mansfield; the sentence was suspended by the trial court, and defendant was placed on two years' probation. Thereafter, the trial court made the following judgment entry:

"This date August 8, 1983, the defendant was ordered by the Court to enter and complete the Alvis House Probation Diversion Program. The Defendant shall follow all rules and regulations of Alvis House and shall continue in the Alvis House Program untill [*sic*] the staff at Alvis House determine that he has successfully completed the program."

On November 9, 1983, defendant was brought before the trial court and charged with violating the conditions of his probation. Defendant's probation officer testified that he was arrested on July 11, 1982, and, on August 19, 1982, on charges of disorderly conduct and failed to complete a probation diversion program at the Alvis House. Defendant objected to the sufficiency of the evidence presented at the probable cause hearing, contending that the evidence was strictly hearsay and that he was unable to confront and cross-examine the witnesses against him. The trial court found probable cause to revoke defendant's probation and a final hearing on the matter was set for November 22, 1983, at which time the court stated:

"THE COURT: Okay. We're here for a probation revocation hearing on Thomas Zeiszler. Probable cause was found on November 9th, and it was con-

tinued until today for final hearing. The probation officer is present and available for any further questioning if you have any questions of him, and the court will hear anything the defendant wishes to present at this time."

Following defense counsel's statement in mitigation, the court revoked defendant's probation and imposed the original sentence of one to five years in the reformatory, from which sentence this appeal is taken. Defendant sets forth the following three assignments of error:

"1. The probation revocation hearing conducted in this case violated defendant's right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.

"2. The trial court erred by ordering the confinement of the defendant when the defendant was erroneously deprived of his right to counsel.

"3. The defendant's probation was erroneously revoked pursuant to an allegation that he failed to abide by a court order when such order was never made a condition of his probation."

In support of the first assignment of error, defendant argues that he was deprived of the minimum due process requirements as set forth in *Morrissey* v. *Brewer* (1972), 408 U.S. 471, since he was deprived of the opportunity to confront and cross-examine any adverse witnesses, and the trial court made no finding that good cause existed for not allowing such a confrontation. Furthermore, defendant argues that there was no written statement as to the evidence relied upon by the trial court and the reasons for revoking defendant's probation; that the trial court placed upon defendant the burden of showing why his probation should not be revoked; and that defendant was denied a hearing before a neutral judge because the record indicates that defendant's guilt was presumed.

In 1972, the United States Supreme Court, in *Morrissey, supra,* set forth minimal due process requirements in dealing with parole revocation hearings. The following year, the court in *Gagnon* v. *Scarpelli* (1973), 411 U.S. 778, applied the doctrine of *Morrissey* to probation revocation hearings, holding that probation revocation, like parole revocation, is not a stage of a criminal prosecution but does result in a loss of liberty. The court stated:

"* * * Accordingly, we hold that a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey* v. *Brewer, supra.*" (Footnote omitted.) *Gagnon* v. *Scarpelli, supra,* at 782.

"In *Morrissey,* we recognized that the revocation decision has two analytically distinct components:

" 'The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?' * * *." (Citation and footnote omitted.) *Id.* at 784.

"* * * At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing. * * * The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause, but the 'minimum requirements of due process' include very similar elements:

" '(a) written notice of the claimed

violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.' * * *." (Citations omitted.) *Id.* at 786.

"In some cases, these modifications in the nature of the revocation hearing must be endured and the costs borne because * * * the probationer's or parolee's version of a disputed issue can fairly be represented only by a trained advocate. But due process is not so rigid as to require that the significant interests in informality, flexibility, and economy must always be sacrificed." *Id.* at 788.

"We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. * * *" *Id.* at 790.

In *State* v. *Miller* (1975), 42 Ohio St. 2d 102 [71 O.O.2d 74], the Supreme Court, in following *Morrissey* and *Gagnon,* held:

"Where, at a probation revocation hearing the trial court permits a probation officer who did not prepare the entries in the probation department record to testify as to the contents of that record and the probation officer who prepared the entries does not appear, there is a denial of the probationer's right to confront the witnesses against him, and, where the record does not show that the probation officer who prepared the entries was unavailable or that a specific finding was made of good cause for not allowing confrontation, there is a denial of the minimum requirements of due process of law required for probation revocation proceedings. * * *" *State* v. *Miller, supra,* syllabus.

The state in oral argument claimed that the case of *State* v. *Spikes* (1981), 67 Ohio St. 2d 405 [21 O.O.3d 254], is inconsistent with the holding of the *Miller* case. However, an examination of the opinion in *Spikes* gives no indication that the Supreme Court intended to overrule or abrogate *Miller.*

The state, in its brief, agrees that defendant is entitled to a rehearing for the reason that he was denied his right of confrontation as required in *Miller,* based upon the law as set forth by the United States Surpeme Court in *Morrissey* and *Gagnon.* We agree with counsel for the state and the defendant that the defendant herein was denied his right to confront and cross-examine the witness or witnesses adverse to him, and that there was no specific finding of good cause set forth by the court for not allowing confrontation. Here, there was a procedural error made by the trial court in denying defendant the right to confront and cross-examine the witness or witnesses who would have testified as to his failure to comply with the probation requirements. Because it is a procedural problem, there is no violation of defendant's right against double jeopardy.

For the foregoing reasons, defendant's first assignment of error is sustained.

In support of his second assignment of error, defendant contends that adding a condition to his probation on August 8, 1983 was imposed upon him in

violation of his right to counsel. No cases have been cited and we have found no cases precisely on point pertaining to this assignment of error. However, a similar case in this court, *In re Stewart* (Apr. 18, 1975), Franklin App. No. 75AP-157, unreported, involved an extension by the court of a probation period for an additional year (from three to four years) without a hearing. This court denied petitioner's request for a writ of habeas corpus holding that a one-year extension of probation could not be viewed as prejudicial to the petitioner since, initially, the petitioner could have been placed on a maximum five years' probation pursuant to R.C. 2951.07, and that the extension of probation is of lesser imposition on a probationer's liberty than either revocation or termination of probation under R.C. 2951.09, which requires that a hearing be held. We agree with the reasoning in *Stewart* that an extension modification or change of probation does not impose upon a probationer's liberty in the same way that revocation impacts. Therefore, the due process procedures required in revocation need not be strictly complied with in cases involving extensions or modifications, especially extensions that confine the total period of probation to a term of less than five years, the allowable time for a probation period under R.C. 2951.07. Defendant's second assignment of error is overruled.

In support of his third assignment of error, defendant argues that, in the absence of an express order making the completion of the Alvis House program a condition of his probation, it cannot be determined that the order constituted a condition of probation. We do not agree. Defendant's claim that the order was not a condition of probation because it was not specifically labeled is not reasonable. The August 8, 1983 order of the court of common pleas is clearly a condition of defendant's probation. No other sensible construction can be made

of such order. Defendant's third assignment of error is overruled.

For the reasons given in our sustaining of the first assignment of error, the order of the court of common pleas revoking defendant's probation is reversed, and the cause is remanded for rehearing in order that defendant be afforded his right of confrontation of witness or witnesses.

*Judgment reversed*
*and cause remanded.*

MOYER and NORRIS, JJ., concur.