CITY OF COLUMBUS, APPELLEE, *v.* LACY, APPELLANT.

(Nos. 87AP-637 and 87AP-638 — Decided March 24, 1988.)

*Ronald J. O'Brien,* city attorney, *James J. Fais,* city prosecutor, and *David E. Tingley,* for appellee.

*James Kura,* county public defender, and *Barbara J. Slutsky,* for appellant.

STRAUSBAUGH, J. Defendant appeals from judgments of the Franklin County Municipal Court revoking her probation.

Defendant, Roberta E. Lacy, pleaded guilty to one count of resisting arrest and to one count of OMVI. Thereafter, on January 8, 1986, defendant was sentenced on the resisting arrest count to ninety days' incarceration and fined $100. On the OMVI charge, defendant was sentenced to one hundred eighty days' incarceration and the court imposed a $300 fine. Of that sentence, three days were suspended upon completion of an alcohol rehabilitation program and the remainder of the days were suspended conditioned upon probation for three years.

Based upon a statement of violations prepared by a probation officer of the Franklin County Municipal Court, defendant was ordered to appear before the court on May 27, 1987 for a preliminary probation revocation hearing. At the hearing, testimony was put on regarding four separate urine samples collected from defendant over a period of approximately one month. Apparently, the person who observed the collection of the samples was no longer employed by the collecting corporation. As such, the testimony was elicited from a vice president of the corporation who stated that, although he had never met defendant or observed the collection of the urine samples, each urine sample was processed pursuant to the corporation's normal business procedures. He also testified that the samples were marked, labeled and stored in a highly secured area to which twelve persons

had access. Pursuant to the normal procedure, the four urine samples were sent to Roche Laboratories ("Roche") for analysis. A report of the analysis was transmitted to the corporation and kept in the ordinary course of business along with similar records. All four reports indicated that defendant tested positive for marijuana.

The state also called defendant's probation officer regarding the terms of defendant's probation. The probation officer testified that he did not write out the statement of violations but, rather, another officer did who took the appointment with defendant on that day.

Based upon the testimony elicited at the preliminary probation revocation hearing, the court found probable cause and a final revocation hearing was scheduled for June 4, 1987. Over defendant's objections, the testimony taken at the May 27, 1987 probable cause hearing was admitted without further evidence. The trial court then revoked defendant's probation.

Defendant on appeal makes a single assignment of error:

"The trial court erred in revoking appellant's probation where the probation revocation hearing conducted violated appellant's right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution."

The United States Supreme Court has established both a bipartite procedure and certain minimum due process requirements for probation revocation hearings. *Gagnon* v. *Scarpelli* (1973), 411 U.S. 778. Specifically, the process of revoking probation requires a preliminary "probable cause" hearing and a subsequent final revocation hearing. *Id.* at 784-786. At the preliminary hearing, the sole inquiry is whether the probationer has in fact violated the terms of probation. *Id.* Once it is determined that the conditions of probation have been violated, a second, less summary proceeding is held to determine whether the probation should be revoked or modified. *Id.* Cf. Crim. R. 32.3 and R.C. 2951.09.

It is for this latter hearing that the court set forth six minimum due process requirements guaranteed by the Fourteenth Amendment. These requirements include:

"* * * (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses * * *; (e) a 'neutral and detached' hearing body * * *; and, (f) a written statement by the factfinders as to the evidence relied upon and reasons for revoking [probation or] parole. * * *" *Gagnon, supra,* at 786 (quoting *Morrissey* v. *Brewer* [1972], 408 U.S. 471, 489).

Here, defendant contends that the procedure below failed to comply with the fourth and sixth requirements of *Gagnon, supra,* and that the state failed to meet its burden of proof to support a revocation order. Specifically, defendant maintains that the trial court compromised her due process right to confront adverse witnesses because the state's witnesses testified solely on the basis of hearsay. In defendant's view, this error was further compounded when the state failed to adduce any additional evidence at the second hearing, but relied instead on the evidence put on at the probable cause hearing.

Contrary to the state's position on appeal, defendant has posited for this court two distinct issues. As the state correctly notes, one issue relates to the admissibility of the testimony regard-

ing the result of defendant's urinalysis. The second issue, however, concerns the testimony of defendant's probation officer, which officer did not write out the statement of violations giving rise to the instant proceeding.

"Where at a probation revocation hearing the trial court permits a probation officer who did not prepare the entries in the probation department record to testify as to the contents of that record and the probation officer who prepared the entries does not appear, there is a denial of the probationer's right to confront the witnesses against him, and, where the record does not show that the probation officer who prepared the entries was unavailable or that a specific finding was made of good cause for not allowing confrontation, there is a denial of the minimum requirements of due process of law required for probation revocation proceedings. (*Morrissey* v. *Brewer,* 408 U.S. 471, and *Gagnon* v. *Scarpelli,* 411 U.S. 778, followed.)" *State* v. *Miller* (1975), 42 Ohio St. 2d 102, 71 O.O. 2d 74, 326 N.E. 2d 259, syllabus.

Thus, due process required the direct testimony of the probation officer who took the appointment with defendant on the day the statement of violations was recorded in defendant's probation record.

Moreover, this court has previously condemned summary procedures like the one held in this case as violative of a probationer's procedural due process right to a final revocation hearing in which to confront adverse witnesses. *State* v. *Zeiszler* (1984), 19 Ohio App. 3d 138, 19 OBR 227, 483 N.E. 2d 493. In fact, it is difficult to perceive any difference between the procedure we found erroneous in *Zeiszler, supra,* and the procedure utilized in this matter.

Defendant also claims error with respect to the testimony and evidence regarding the urinalysis results. Specifically, defendant maintains that since both the testimony of the state's witness and the laboratory report were hearsay, such evidence was inadmissible as violative of her right to confront and cross-examine adverse witnesses.

Initially, we note that probation revocation proceedings are specifically excluded from coverage under the Ohio Rules of Evidence. Evid. R. 101(C)(3). Such exclusion is also consistent with prior Ohio law. *State* v. *Theisen* (1957), 167 Ohio St. 119, 4 O.O. 2d 122, 146 N.E. 2d 865, paragraph three of the syllabus. Rather, the inquiry with respect to the admission of hearsay evidence is governed solely by the due process limitations imposed by the Fourteenth Amendment.

In this respect, the Fourteenth Amendment guarantees a probationer a conditional right to confront and cross-examine adverse witnesses at both the preliminary and final hearing stages. *Gagnon, supra,* at 786. The confrontation right at issue in this matter does not arise by virtue of the substantive provisions of the Sixth Amendment, but is rather a *procedural* protection guaranteed by the Fourteenth Amendment. *Morrissey, supra,* at 477-480. The reason for the distinction is the fact that the probation revocation proceeding is not part of the formal criminal prosecution but is "an informal hearing structured to assure that the finding of a * * * [probation] violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the * * * [probationer's] behavior." *Morrissey, supra,* at 484. To this end, the Supreme Court noted that the process must remain flexible and contemplates the giving of documentary evidence to support revocation. *Id.* at 485-487, and *Gagnon, supra,* at 782, fn. 5. Thus, the

right of confrontation is not an absolute right, but is subject to a finding of good cause for denying the right. *Morrissey, supra,* at 489, and *Gagnon, supra,* at 786.

Although the Supreme Court has not set forth specific requirements for a showing of good cause, several federal courts have addressed the issue in the context of testimony and documentary evidence relative to laboratory reports or tests. See, *e.g., United States* v. *Bell* (C.A.8, 1986), 785 F. 2d 640; *United States* v. *Penn* (C.A.11, 1983), 721 F. 2d 762 (citing cases); *United States* v. *McCallum* (C.A.4, 1982), 677 F. 2d 1024, certiorari denied (1982), 459 U.S. 1010; *Prellwitz* v. *Berg* (C.A.7, 1978), 578 F. 2d 190; *United States* v. *Miller* (C.A.9, 1975), 514 F. 2d 41. Relying on dicta from both *Morrissey* and *Gagnon,* these courts have set forth several grounds for finding good cause. See, *e.g., Penn, supra,* at 764-765. Specifically, good cause is shown where the record demonstrates that the state would incur difficulty and expense in procuring live witnesses and the evidence is demonstrably reliable. *Id.* at 765; *Bell, supra,* at 642-643; *McCallum, supra,* at 1026.

"First, the court should assess the explanation the government offers of why confrontation is undesirable or impractical. For example, the government might contend that live testimony would pose a danger of physical harm to a government informant * * * [citations omitted], or, as suggested by *Gagnon,* that procuring live witnesses would be difficult or expensive.

"A second factor that must be considered, and one that has been focused upon by a number of courts, is the reliability of the evidence which the government offers in place of live testimony. * * * [Citations omitted.] Thus, where the government demon-strates that the burden of producing live testimony would be inordinate and offers in its place hearsay evidence that is demonstrably reliable, it has made a strong showing of good cause. Where, on the other hand, the government neither shows that presenting live testimony would be unreasonably burdensome nor offers hearsay evidence that bears indicia of reliability, the probationer is entitled to confrontation." *Bell, supra,* at 643.

Demonstrative reliability is necessarily not susceptible to precise definition. Rather, reliability is demonstrated by the facts of the particular case and by the inherent trustworthiness of particular evidence. "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Ohio* v. *Roberts* (1980), 448 U.S. 56, 66. However, given the noncriminal character of probation proceedings, a less rigorous standard is presumably available to show reliability. For example, some documentary evidence is inherently trustworthy, despite the hearsay nature and the unavailability of a hearsay exception. An example is hospital records, which Ohio has statutorily recognized as reliable even in the absence of testimony by the custodian. R.C. 2317.422; *State* v. *Spikes* (1981), 67 Ohio St. 2d 405, 21 O.O. 3d 254, 423 N.E. 2d 1122. In other circumstances, however, a court may not be able to readily ascertain the trustworthiness of the evidence and should require some demonstration that the evidence is reliable.

Here, the state presented the testimony of the vice president of a corporation which supervised the donation of defendant's urine samples. That witness testified over defendant's objections that he did not know defendant; and that he did not personally observe defendant donate the samples.

However, he did testify that the routine practice of the corporation was for an employee to observe the donation of the sample; that the employee who observed defendant's donations was no longer employed by the corporation; that samples are usually marked, preserved and sent to Roche Laboratories for analysis; that Roche returns to the corporation reports of the urinalysis; and, that the reports regarding defendant indicated that defendant's urine had tested positive for marijuana on four separate occasions.

Clearly, the record demonstrates that the witness was competent to testify as to the routine procedure used by his corporation in collecting, marking and dispatching urine samples for analysis. He was the custodian of records kept by the corporation and the employee who had observed the donations was not readily available. Inferentially, then, this testimony could establish the reliability of the procedure used to collect, mark and dispatch defendant's samples. Thus, his testimony regarding these matters was admissible.

On the other hand, the testimony regarding the results of defendant's urinalysis was inadmissible under the facts of this record. There is no indication in the record that the state's witness had any knowledge of or responsibility for the records maintained by Roche. As such, his testimony

relative to those records was not grounded on any hearsay exception. See Evid. R. 803(6). For this same reason, the records, likewise, were not admissible as an exception to the rule against hearsay. Nor is there any evidence before this court which would otherwise suggest the inherent trustworthiness of the urinalysis results. The state did not adduce any evidence tending to establish that the Roche reports are the regular reports of a company which conducts such tests or that Roche expects its clients to act on the basis of its reports.[1] Moreover, the record does not reflect why a Roche representative was not available to testify as to the procedures used by Roche or as to the reports of defendant's urinalysis.[2] As such, the record is totally devoid of evidence which would permit a finding of good cause sufficient to overcome defendant's conditional right to confront and cross-examine adverse witnesses regarding the urinalysis reports.

Based on the foregoing, defendant's sole assignment of error is found meritorious. The judgments of the municipal court are reversed and the causes are remanded to that court for further proceedings consistent with this opinion.

*Judgments reversed and causes remanded.*

REILLY and BOWMAN, JJ., concur.

---

[1] Although the four reports are consistent in result and indicate that the results were rechecked, that in itself suggests only that the *testing procedure* is reliable. Such evidence does not indicate that the *results* of such procedures are reliable in the sense that others rely on the results for business purposes.

[2] The Roche reports identify the testing laboratory as a local laboratory. Thus, the evidence does not lend itself to an inference that the state was unable to produce a witness without difficulty or expense. Moreover, the reports provided a local phone number and the name of the supervising physician which suggests the availability of a witness.