OPINION
Defendant Alfred E. Stokes II appeals the judgment of the Court of Common Pleas of Union County, finding that he violated the terms of his community control sentence and imposing upon him a term of 18 months incarceration in the custody of the Ohio Department of Rehabilitation and Correction.
On September 9, 1997, the court conducted a plea hearing and the defendant pled guilty to one count of Receiving Stolen Property, a felony of the fourth degree, and signed a detailed entry entering a guilty plea. The signed plea entry contained language similar to that found in R.C. 2929.19(B)(5), but did not indicate a specific prison term as required by the plain language of that statute. The court apparently ordered a presentence investigation and set a sentencing date for approximately one month later.
On October 15, 1997, the defendant was sentenced by the court to five years of community control, including ninety days at a work release program in the Union County Discipline and Rehabilitation Center ("DRC"). In sentencing defendant to a community control sanction, the court made the following apparently contradictory statements:
 The Court further finds that up until right now that you're showing no remorse; that you were on probation to Marysville Municipal Court, and that you're really not amenable to community control. Prison is consistent with the sentencing purposes in this case.
 The Court finds that you've been convicted of receiving stolen property, in violation of Ohio Revised Code Section 2913.51, which is a felony of the fourth degree, and it is hereby ordered that you serve a term of 18 months in prison, and pay the costs of prosecution.
 The sentence will be suspended, and you'll be placed on five years of community control, upon the following terms and conditions. * * * * (emphasis added).
Defendant did not appeal the court's decision, and proceeded to enter the Union County program. However, following a hearing on November 26, 1997, at which the defendant was not represented by counsel, the court found that the defendant had violated the terms of his community control and "reimposed" the "suspended" 18 month sentence of incarceration.
Pursuant to an agreement between the parties and the court, a rehearing on the community control violation was conducted on October 22, 1998.[1] At that hearing, the defendant appeared with counsel and the court proceeded to take evidence and hear witnesses. At the conclusion of the hearing, the court again found that the defendant had violated the terms of his community control sanction, and again "reimposed" the sentence of eighteen months incarceration. The court ordered that defendant serve the balance of the 18 month sentence, and gave credit for the time he served in prison between the two hearings together with time he spent in jail prior to his original trial date. However, the court did not give defendant jail-time credit for the time defendant spent on work release. Defendant now asserts five[2] assignments of error with the court's sentence.
I.
 The court erred in refusing to follow the proper sentencing guidelines when he gave the defendant a "suspended sentence" and placed him on community control without appropriately advising the defendant as to the amount of incarceration that could be imposed if community control was violated.
It is undisputed that at defendant's initial sentencing hearing, the court failed to give notices to the defendant required under R.C. 2929.19(B)(5):
 If the sentencing court determines at the sentencing hearing that a community control sanction should be imposed and the court is not prohibited from imposing a community control sanction, the court shall impose a community control sanction. The court shall notify the offender that, if the conditions of the sanction are violated, the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the specific prison term that may be imposed as a sanction for the violation, as selected by the court from the range of prison terms for the offense pursuant to section 2929.14 of the Revised Code. (emphasis added).
However, the state argues that the defendant was given the required notice at his plea hearing, approximately one month prior to his sentencing. At his plea hearing, the defendant signed an entry which contained the following language:
 I understand that any prison term that may be imposed by the Court will be the term served without good time credit. I further understand if I commit a crime in prison I will be subject to the imposition of bad time and as a result the parole board could increase my prison time for acts committed by me while in prison that are a crime under the laws of Ohio or the United States. * * * * I further understand after prison release, I may have up to three years of post release control. * * * * I understand if this Court is not required by law to impose a prison sanction it may impose a community control sanction or nonprison sanction upon me. If I am granted community control at any point in my sentence and if I violate any of the conditions imposed, I may be given a longer period through court control, greater restrictions, or a prison term from the basic range of sentence up to a maximum of five years. (emphasis added).
Additionally, at defendant's sentencing hearing, the court stated that defendant would be "ordered * * * to serve a term of 18 months in prison, and pay the costs of prosecution." However, the court "suspended" that sentence and placed the defendant on five years of community control.
The clear language of R.C. 2929.19(B) requires that the court select a term of incarceration from the statutorily allowable terms and directs that the court select a term from the range of terms available under R.C. 2929.14 and that the court "shall indicate the specific prison term that may be imposed as a sanction for the violation." Here, the maximum term allowable for defendant's community control violation was eighteen months incarceration, not "up to * * * five years." Defendant argues that the court failed to give the statutorily required guidance to the defendant as to what specific term of incarceration he could face for a community control violation, and therefore lacked discretion to enter a sanction of incarceration for defendant's community control violation pursuant to R.C. 2929.14.
The state argues in response that the defendant's action in signing the plea entry, taken with the court's announcement at the sentencing hearing that it had "suspended" an eighteen month sentence, constitutes substantial compliance with R.C.2929.19(B)(5). We agree. Although the best policy would be to follow the language of the statute (thus ensuring that defendants receive the proper notice), the trial court's admonition at the sentencing hearing clearly put defendant on notice that if he violated his community control sanction that he could be sentenced to up to eighteen months in prison. While failure to provide the proper notice may be erroneous, we perceive no prejudice to this defendant caused by the court's failure to couch this notice in the language of R.C. 2929.19(B)(5). Accordingly, defendant's first assignment of error is overruled.
II.
 The court erred when it failed to properly consider and follow the sentencing guidelines at the second sentencing hearing wherein the court sentenced the defendant to a period of incarceration.
As noted, at defendant's sentencing hearing, the court elected to sentence him to eighteen months in prison, but "suspended" that sentence and placed him under community control. As we observed in State v. Riley (November 12, 1998), Union App. No. 14-98-38, at *6, "there is no provision in the sentencing statute which permits a court to suspend a prison term or make community control a condition of a suspended prison term." Moreover, in Riley we held that when a trial court sentences a defendant for a fourth or fifth degree felony, before the court can impose a prison term it must find that the defendant is not amenable to a community control sanction. R.C. 2929.13(B)(2)(a).
A correct understanding of the sentencing statutes requires sentencing courts to comply with R.C. 2929.14(B) prior to the imposition of a term of incarceration for a community control violation. State v. Riley, supra at *7-8. There is no provision in the statute for a court to "reimpose" a sentence it "suspended" for the underlying criminal offense as the sanction for a community control violation. While such a procedure may have been appropriate under the law prior to Senate Bill 2's sentencing revisions, it is no longer statutorily valid. R.C. 2929.11 et seq.
In this case, we cannot hold that the court made the findings required to sanction defendant to more than a minimum term of incarceration for the community control violation. Although the state would have us accept the trial court's findings at the October 1997 sentencing hearing as sufficient, those findings cannot logically relate to defendant's community control violation because that violation had not yet occurred.
Moreover, even if we were to accept the state's argument that the court's original sentencing findings granted the court authority to enter the eighteen month sentence, our review of the court's felony sentencing findings made that date indicate that the court failed to enter any findings pursuant to R.C. 2929.14. In State v. Riley, we held that subsection (B) of the community control statute requires a court to satisfy the felony sentencing requirements of R.C. 2929.14 before sentencing a community control violator to a prison term.
 (B) * * * [I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
* * * *
 (C) * * * [T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section. (emphasis added).
R.C. 2929.14. We therefore follow our decision in State v. Riley, and hold that it was error for the court to sanction defendant to a sentence of incarceration beyond the "shortest prison term authorized for the offense" without complying with the mandates of R.C. 2929.14(B) at the community control violation hearing. We additionally observe that it was erroneous for the court to order defendant to serve the maximum sentence without complying with R.C. 2929.14(C). Because the court failed to make the findings required under R.C. 2929.14(B) and (C), it lacked discretion to sentence defendant to any term of incarceration other than the minimum term. Defendant's second assignment of error is sustained.
III.
 The trial court violated defendants [sic] constitutional rights when it considered improper testimony during the probation revocation hearing and the state failed to otherwise prove the violation.
Defendant's third assignment of error argues that his due process rights were violated when the court found a violation based solely upon the testimony of two witnesses who lacked any personal knowledge of the violations of conditions of defendant's community control sanctions.
At defendant's community control sanction violation hearing, the state presented only two witnesses. Bryan Lynch, the director of the Union County Day Reporting an Community Service Program, testified that defendant was scheduled to enter the day reporting program after completing his residency at the Discipline and Rehabilitation Center (DRC). However, defendant never came under Mr. Lynch's supervision because defendant never completed his residency at the DRC program. Mr. Lynch testified "[u]pon the information via documents and reports received from the Discipline and Rehabilitation Center" that defendant was terminated from the DRC program "as a program failure" for several violations of the DRC program rules, including two THC-positive urine screens, three instances of smoking on the DRC premises, use of a racial slur, and once "being out of place outside the center." While Mr. Lynch testified as to the general nature of each alleged offense, he gave no specific information about any incident and on cross-examination admitted that he had no knowledge of the facts underlying these offenses:
 Q. Mr. Lynch, are you a probation officer for the State of Ohio?
A. No.
 Q. Do you have any personal firsthand knowledge of the underlying facts constituting the probation violation allegations?
A. Could you clarify firsthand.
Q. Were you there when any of these occurred?
A. No.
The state also presented the testimony of Anne Gangluff, the DRC programs manager and records-keeper. Ms. Gangluff testified that the records reflected that defendant had tested positive for THC on several occasions. Although she did testify that the records were "true and accurate" copies of records kept at the DRC, Ms. Gangluff never testified that the records were kept in the normal course of the DRC's business. On the other hand, Ms. Gangluff did testify that she was present at a disciplinary hearing on October 16, 1997, at which defendant was found in violation of the program rules by his being "out of place outside the Center." She also testified that at the hearing, defendant had admitted being "out of place outside the Center."
Although we agree with the State that a community control violation need not be proven beyond a reasonable doubt, there must be substantial proof to support a determination that a defendant violated the terms of his sanction.
See, e.g., State v. Hylton (1991), 75 Ohio App.3d 778, 782-3; State v. Davis (June 26, 1998), Lake App. No. 97-L-133, unreported at *2-3. Furthermore, the evidence presented must satisfy the requirements of the Due Process Clause of the U.S. Constitution as described in Morrissey v. Brewer (1972),408 U.S. 471. The Ohio Supreme Court has held that under Morrissey the due process right to confront and cross-examine witnesses generally requires that the probation officer who prepared the entries for a defendant's probation record testify as to the contents of that record.
 Where at a probation revocation hearing the trial court permits a probation officer who did not prepare the entries in the probation department record to testify as to the contents of that record and the probation officer who prepared the entries does not appear, there is a denial of the probationer's right to confront the witnesses against him, and, where the record does not show that the probation officer who prepared the entries was unavailable or that a specific finding was made of good cause for not allowing confrontation, there is a denial of the minimum requirements of due process of law required for probation revocation proceedings.
State v. Miller (1975), 42 Ohio St.2d 102, syllabus; State v. Pedraza (December 19, 1997), Greene App. No. 97-CA-65. Here, with the exception of Ms. Gangluff's testimony pertaining to the allegation that defendant was "out of place," the record does not reveal any other factual evidence as to the incidents alleged to violate defendant's community control conditions. Cf. State v. Todd (March 29, 1999), Auglaize App. No. 2-98-25, unreported at *3-4. Neither witness had direct knowledge of those other incidents, and neither witness had any firsthand knowledge of the scientific analysis of defendant's urine screens. See Columbus v. Lacy (1988), 46 Ohio App.3d 161, 164-65. Moreover, the record indicates that the court's action was based upon a combination of all of defendant's alleged program violations, rather than merely on the allegation that defendant was "out of place." Finally, directly contrary to the syllabus rule in Miller, the DRC officer who prepared the records of the alleged incidents did not testify and there is no indication on the record of "good cause" as to why that witness was not presented by the state.
Thus, despite the testimony of Ms. Gangluff as to one of the several grounds for violation, we conclude that on the whole the court's finding that defendant violated his community control sanction based on this evidence resulted in a denial of due process. We therefore sustain defendant's third assignment of error.
V.
The defendant did not receive a bipartite hearing.
Defendant's fifth assignment of error argues that the court failed to hold two separate community control violation hearings in accord with the decision in Gagnon v. Scarpelli (1973),411 U.S. 778. However, this court has held that the judgment of a trial court revoking probation will not be reversed where two separate hearings have not been held unless it appears from the record that the defendant was prejudiced by the failure to hold a preliminary hearing. State v. Miller (1975), 45 Ohio App.2d 301. The defendant argues that had he received a bipartite hearing, his counsel would have known to file a motion to suppress. However, we believe that our judgment sustaining defendant's third assignment of error renders this argument moot. Moreover, it appears that defendant failed to object to this issue in the trial court, and has thereby waived his objection to the consolidation of the two hearings. Defendant's fifth assignment of error is therefore overruled.
IV.
 The trial court erred when it sentenced the defendant to a longer sentence than that authorized by R.C. 2929.14(A)(4).
Defendant's final assignment of error argues that the trial court failed to grant defendant jail-time credit for the time he served in the DRC. Defendant argues that because the court subsequently sentenced defendant to the maximum prison term of eighteen months incarceration, the court's failure to grant credit for the time defendant spent in the DRC program resulted in a sentence greater than the maximum allowed under R.C.2929.14(A)(4).
In State v. Hines (February 8, 1999), Auglaize App. No. 2-98-11, unreported, this court held that R.C. 2967.191 requires courts to grant jail-time credit for "confinement" for any reason arising out to the offense for which a defendant was convicted and sentenced. See Id. at *8. We also observed that R.C. 2949.08
defines "confined" as including those persons who are "confined for any period or periods of time totaling more than eight hours during that day." State v. Hines, supra at *6 [5], quoting R.C.2949.08. However, in State v. Nagle (1986), 23 Ohio St.3d 185, the Ohio Supreme Court held that courts are not always required to give jail-time credit to time spent in a private drug rehabilitation facility as a condition of probation. The Nagle decision does not preclude a grant of jail-time credit, but has been interpreted to require sentencing courts to "review the nature of the program to determine whether the restrictions on the participants are so stringent as to constitute "confinement" as contemplated by the legislature." State v. Jones (1997),122 Ohio App.3d 430, 432. The record on appeal contains only limited evidence as to the nature of restrictions placed on DRC participants, and no findings by the trial court on this issue. The issue is therefore not properly preserved for our review at this time, and defendant's fourth assignment of error is overruled. However, because we have reversed the decision on other grounds, on remand the trial court should consider evidence as to the nature of the restrictions and the conditions on DRC participants and address the question of whether defendant was "confined" such that jail-time credit should be granted to the defendant for his stay in the DRC.
In sum, defendant's second and third assignments of error are sustained. Defendant's first, fourth, and fifth assignments of error are overruled. For the reasons stated, the case is reversed and remanded to the trial court for further proceedings consistent with this opinion.
Judgment reversed and remanded.
HADLEY and WALTERS, JJ., concur.
[1] Although the record on appeal is not entirely clear, it appears that the defendant was not represented by counsel at the November 26, 1997 hearing. The "agreement" that led to the second community control violation hearing was apparently entered into by the parties to avoid a possible reversal of defendant's sentence pursuant to this Court's decision in State v. Avery (February 12, 1998), Union App. No. 14-97-28, unreported. In Avery, this Court held that where a court treats a preliminary probation revocation hearing as a final hearing, the probationer is entitled to the assistance of counsel. See also State v. McKnight (1983),10 Ohio App.3d 312, 314, and State v. Riley (June 4, 1998), Union App. No. 14-98-1, unreported.
[2] Defendant's brief actually treats what we have called his fifth assignment of error as a subpart of his third assignment. For the sake of clarity, we have chosen to address it separately.