DECISION AND JUDGMENT ENTRY
{¶ 1} Cannon A. Ball appeals the revocation of his community control sanction by the Scioto County Court of Common Pleas on due process grounds. He contends that his right to confrontation was violated since the probation officer who prepared the notice of violation did not testify. Because there is no evidence that the Director of the Intensive Supervision Probation Program had any personal knowledge of the events relating to Ball's violations, his testimony was unnecessary. Moreover, because Ball was given the opportunity to cross-examine the witnesses who did have knowledge of his violations, we conclude that the court did not violate Ball's right to due process. He also contends that the court abused its discretion because it made erroneous factual findings, which it carried over into its judgment entry. Because the record supports the statements in the judgment entry that Ball admitted to violating the terms of his probation and that Ball waived his right to a separate dispositional hearing, the trial court did not err. Therefore, we affirm the court's judgment.
 {¶ 2} In July 2001, a grand jury indicted Ball on one count each of burglary, breaking and entering, and theft. Ball ultimately pled guilty to burglary, a felony of the third degree, and attempted breaking and entering, a misdemeanor of the first degree. In May 2002, the Scioto County Court of Common Pleas sentenced Ball to five years of community control, including a minimum of six months in the Intensive Supervision Probation Program ("ISP"), imposed a fine, and ordered Ball to perform 300 hours of community service.
 {¶ 3} On September 30, 2002, the Probation Department filed a notice with the trial court indicating that the Chief Supervising Officer had probable cause to believe that Ball violated the terms of his supervision "by being arrested for assault on 06/18/02; by being arrested for disorderly conduct and theft on 07/04/02; by failing to complete community service hours as ordered; by consuming alcohol on 09/27/02, while on intensive supervision probation; by failing to cooperate with the probation dept. and resisting arrest on 09/28/02." The notice was signed by Ball's probation officer, the Chief of the Probation Department, and the Director of the Intensive Supervision Probation Department. Based on this notice, the court scheduled a probation revocation hearing.
 {¶ 4} During the hearing, the State introduced the testimony of several witnesses. Scioto County Deputy Sheriff Shawn Sparks testified that on September 27, 2002, he investigated a complaint of loud music and a party at Ball's residence. Deputy Sparks testified that he observed a keg of beer on Ball's back porch and several people, including Ball, drinking from it. However, when the deputies knocked on Ball's front door, no one answered. Eventually, officers from the Probation Department were contacted and arrived at the Ball residence. After knocking several times and ordering Ball to come to the door, the Probation Department officers decided to enter the residence by force. After encountering several people in the residence, Ball was located in an upstairs bedroom and ordered to get on the floor. According to Deputy Sparks, Ball was "hollering at them and he wouldn't comply with their orders." A struggle ensued and Ball was forced to the ground. Deputy Sparks testified that Ball appeared intoxicated, was trying to get up, and was swinging at the officers. Deputy Sparks maced Ball. Thereafter, Ball was handcuffed and taken outside where Deputy Sparks heard Ball state that he drank four beers. On cross-examination, Deputy Sparks conceded that he could not definitively state that Ball was drinking beer out of his cup as he could not see the cup's contents, but he did see Ball get something out of the keg, put it in his cup, and drink from the cup.
 {¶ 5} Scioto County Deputy Sheriff Anthony Crawford testified that on June 18, 2002, he filed for an arrest warrant for Ball in the Portsmouth Municipal Court based on an allegation of assault. The assault charge is still pending. Deputy Crawford further testified that on or about July 4, 2002, Deputy Drake arrested Ball for drunk and disorderly conduct and picked him up on a warrant for theft. On cross-examination, Deputy Crawford testified that he was not present at the incident which resulted in the assault charges, but received a complaint and took witness statements. He did not personally participate in the July 4th arrest.
 {¶ 6} Nick Ferrara, a probation officer with the Adult Probation Department for the Scioto County Court of Common Pleas, testified that while on ISP, probationers are not allowed to consume alcohol. Ball reports to Ferrara while on ISP.
 {¶ 7} On September 27, 2002, the Sheriff's Department contacted Ferrara regarding Ball. Ferrara went to the Ball residence and found deputies surrounding the perimeter of the house. Ferrara knocked on the door and yelled for Ball to come outside but received no response even though he could see people moving around inside the house and lights being turned on and off. At one point, Ferrara observed Ball through a window. Thereafter, Ferrara pushed the door open a crack, identified himself, and again yelled for Ball to come outside. Ferrara heard Ball state that it was his house and he didn't have to come outside.
 {¶ 8} At that point, Mr. Rase pushed the door open and Ferrara led the way into the house with Rase following him and Deputy Sparks following Rase. Ferrara went up the stairs and heard Ball in a bedroom apparently talking on the telephone. Despite yelling for Ball to come out of the room, Ferrara received no response. Ferrara kicked in the bedroom door and saw Ball standing in the middle of the room. Ferrara instructed Ball to put down the phone and put his hands up. Again, Ball did not respond and continued talking on the telephone. Ferrara instructed Ball that he was under arrest and that he should come out, then went inside the room and grabbed Ball's arm. Ball pulled away from Ferrara and Ferrara grabbed the back of his head and took him to the ground. Ball struggled the entire time and Rase assisted in keeping him down. Because Ball had always been cooperative with Ferrara in the past, Ferrara believed that Ball was under the influence of alcohol. Ball finally stopped struggling when Deputy Sparks maced him and Ball was then handcuffed and taken outside. Ferrara asked Ball how much he had to drink and Ball stated that he'd had about four beers.
 {¶ 9} Ferrara testified that when a probationer begins his probation, the rules of the Probation Department are explained to him. Probationers are required to comply with all verbal and written orders of a probation officer and probationers must agree to searches of their person, residence and automobile without a warrant. On the evening at issue, Ball did not comply with Ferrara's orders. Ball also violated the terms of his probation by drinking alcohol and by being arrested for assault, disorderly conduct and theft.
 {¶ 10} On cross-examination, Ferrara acknowledged that the charges pending against Ball have not been resolved. Ferrara testified that he informed Ball that he would not be removed from ISP until he completed his 300 hours of community service. As of the hearing date, Ball had completed 25 hours of community service. Ferrara testified that he could smell alcohol on Ball on the evening of his arrest. On redirect examination, Ferrara testified that Ball failed to complete his community service hours as ordered.
 {¶ 11} James Rase testified that he is employed by the Scioto County Probation Department and participated in the call on September 28, 2002 in reference to Ball. Rase was present when Ball failed to comply with Ferrara's commands and Rase observed Ball resisting arrest. Rase testified that he could smell an alcoholic beverage in the room where Ball was arrested and that he heard Ball admit that he drank four beers.
 {¶ 12} Ball called several witnesses to testify on his behalf. Carl George testified that he was with Ball all day on September 27, 2002. George testified that there were people at Ball's house that evening but there was not a party. George further testified that there was a keg on the back porch but that it always sits there and it belongs to either Ball's father or his family.
 {¶ 13} George stated that he was inside the bedroom where Ball was arrested and there was no alcohol in the room. George testified that he did not see Ball drinking beer at any point during the evening. When the officers came in the room, they grabbed Ball, threw him on the ground, started kicking and beating him, maced him, cuffed him, and asked him to sit up. Ball couldn't see to stand up so they carried him outside. George testified that the officers did not identify themselves or tell Ball he was under arrest. George did not see Ball fight with the officers or resist in any way. George said that Ball's nose was swollen, he was incoherent and he was limping a little.
 {¶ 14} Christine Scott testified that she is an attorney and represents Ball and other members of his family. Scott represents Ball on charges that are pending before the Portsmouth Municipal Court relating to an assault, a theft charge, and a resisting arrest charge. Scott testified that she saw Ball shortly after September 27, 2002 and that he had abrasions on his forehead and his face, his left ear was swollen and red with bruising and broken blood vessels, and he had bruises on his leg and thigh. On cross-examination, Scott stated that the abrasions could have been from rug burn.
 {¶ 15} Tracy Howell testified that she is Ball's sister and was on the phone with him around midnight on September 28th. She stated that Ball did not sound intoxicated and did not tell her that he had any beer. Howell was still on the phone with Ball when the officers came in the room. Howell heard the door being kicked in, the phone drop, and Ball telling Howell to call the FBI. She then heard Ball say he couldn't see. Howell could hear things being knocked around.
 {¶ 16} Herman Ball testified that he is Ball's father and that he observed his son the day after his September 28th arrest. Ball's left ear was bruised and he had a big scuff on his right cheek and his nose.
 {¶ 17} Dan Malone testified that he is a Sergeant with the Scioto County Sheriff's Office and that he observed Ball after his arrest on September 28th when he was brought to the Scioto County Jail. Ball had been sprayed with mace, was pretty upset, and had some bruising on his face. Sergeant Malone did not smell alcohol on Ball. Ball was belligerent, but his speech was not slurred.
 {¶ 18} After hearing the evidence, the court found that Ball had violated the terms and conditions of his community control by disobeying a direct order from his probation officer, failing to open the door to permit the probation department to enter his house, failing to complete community service, consuming alcohol, and resisting his probation officer. Therefore, the court terminated Ball's community control. The court then asked Ball's counsel if she had anything to say or offer on behalf of her client prior to sentencing and defense counsel stated that she did not. The court asked Ball if he wished to say anything on his own behalf in mitigation of sentencing or as to why sentencing should not take place and Ball declined. The court then sentenced Ball to three years imprisonment and a $300 fine on the burglary conviction, and 120 days in jail and a $100 fine on the breaking and entering conviction, to run concurrently. Ball filed a timely appeal and assigns the following errors: "I. The trial court violated defendant's right to confrontation and due process where the probation officer who prepared the statements of violation did not appear and testify. II. The trial court abused its discretion where it's [sic] judgment entry revoking defendant's community control was journalized incorrectly."
 {¶ 19} In his first assignment of error, Ball contends that the trial court violated his right to confrontation and due process because Dan Delotell, one of the three Probation Department employees who signed the notice of probable cause for the revocation of probation, did not testify at the probation revocation hearing. In support of his argument, Ball relies on Columbus v. Lacy (1988), 46 Ohio App.3d 161, 546 N.E.2d 445.
 {¶ 20} In Lacy, the State alleged that the defendant had violated the terms of her probation by testing positive for marijuana use. At the revocation hearing, the defendant's probation officer testified regarding the terms of the defendant's probation. The probation officer also testified that another probation officer, who did not appear at the hearing, had the appointment with the defendant on the day she tested positive for marijuana use and that officer had recorded the statement of violations. The court revoked Lacy's probation, at least in part, based on this testimony. On appeal, the defendant argued that the trial court compromised her due process right to confront adverse witnesses because the State's witnesses testified solely on the basis of hearsay. The Tenth District Court of Appeals agreed and held that due process required the testimony of the probation officer who prepared the statement of probation violation unless the record shows good cause for the officer's absence from the hearing. Id. at 163. Thus, while probation revocation proceedings are specifically excluded from coverage under Evid.R. 101(C)(3), hearsay can run afoul of due process concerns.
 {¶ 21} In this case, the court did not deny Ball his right to confront adverse witnesses nor did the court revoke his probation based on hearsay testimony. Deputy Sparks, Ferrara and Rase testified as to what they actually observed and heard on September 27th and 28th. Deputy Crawford testified as to the events surrounding the assault charges pending against Ball.[1] The State did not introduce any statements or written entries made by Dan Delotell, nor is there anything in the record to indicate that the trial court relied on such evidence in revoking Ball's probation.
 {¶ 22} In fact, there is no evidence that Delotell had any personal knowledge about the events at issue in the hearing; rather, it appears he simply signed the probable cause statement in his capacity as Director of the Intensive Supervision Program. Thus, his testimony was not necessary to establish the violations. It appears that Ferrara, who signed the document in his capacity as Ball's probation officer, had actual knowledge as to the alleged probation violations. Because Ball was given the opportunity to confront the witnesses who testified against him, he was not denied his due process rights. Ball's first assignment of error is overruled.
 {¶ 23} In his second assignment of error, Ball asserts that the court abused its discretion because its judgment entry revoking Ball's community control was journalized incorrectly. We conclude that the court did not incorrectly journalize the hearing events.
 {¶ 24} First, Ball asserts that the court erroneously stated that he admitted to violating the rules and regulations of community control despite the fact that Ball did not make this admission during the hearing. However, numerous witnesses testified that Ball admitted to drinking four beers while on community control, a violation of the rules of the Intensive Supervision Program.[2] Therefore, the court's statement that Ball admitted to violating the terms of community control is accurate.
 {¶ 25} Secondly, Ball states that the court erroneously stated that Ball waived his right to a separate disposition hearing and elected to proceed immediately. While not phrased exactly in this manner, the record reflects that the trial court specifically asked Ball whether he would like to say anything as to "why sentencing should not now take place" and Ball declined. (Tr. at p. 70) The court also asked defense counsel if she had anything to say or offer on behalf of her client prior to sentencing and she responded in the negative. This sequence of events was likely interpreted by the court as a waiver of a separate dispositional hearing and an election to immediately proceed with sentencing. This is especially true in light of Ball's failure to object when the court proceeded with sentencing. This silence amounted to waiver of the right to a separate dispositional hearing when taken in conjunction with Ball's response to the court's inquiry. Therefore, the court's journal entry in this regard is not incorrect.
 {¶ 26} Because neither of the court's statements cited by Ball is factually inaccurate, Ball's second assignment of error is without merit and is overruled.
 {¶ 27} Having overruled both of Ball's assignments of error, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, P.J. Abele, J.: Concur in Judgment and Opinion.
[1] Deputy Crawford also testified that Deputy Drake arrested Ball for drunk and disorderly conduct and based on a warrant for theft. However, Ball did not object to this testimony in the trial court or in this appeal. Moreover, Ball's own witness, Christine Scott, testified as to all the criminal charges pending against Ball. In any event, the court did not cite the additional crimes pending against Ball as reasons for finding that he violated the terms of his community control.
[2] Though not raised at the hearing, the record also reflects that Ball was younger than the legal drinking age in September 2002 and, therefore, even if not a violation of the Intensive Supervision Program, Ball's consumption of alcohol was a violation of the law.