OPINION
{¶ 1} This is an appeal of the trial court's decision finding that he had violated his community control and imposing his original sentence.
 {¶ 2} Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} On July 7, 2000, Appellant Bartley S. Meadows was indicted by the Fairfield County Grand Jury on one count of Felonious Assault and one count of Aggravated Burglary.
 {¶ 4} On December 15, 2000, Appellant pled guilty to one count of felonious assault and one count of aggravated burglary. (Nunc Pro Tunc Entry 7/18/06).
 {¶ 5} On December 15, 2000, the trial court sentenced Appellant to four (4) years in prison on the Aggravated Burglary charge and seven (7) years in prison on the Felonious Assault charge, with the sentences to be served consecutively. The four year sentence on the Aggravated Burglary was ordered into execution immediately. The seven year sentence on the Felonious Assault charge was suspended and Appellant was placed on five (5) years community control, effective upon his release from prison on the Aggravated Burglary charge.
 {¶ 6} Appellant served four years in prison and was released on June 6, 2004. (Rev. Hrng. T. at 27). Appellant was then placed on community control with no additional restrictions beyond the standard terms but began using drugs and was sent to CTC for drug treatment because he was using cocaine and marijuana. Id at 27.
 {¶ 7} On March 15, 2005, the State filed a motion to revoke the community control of Appellant alleging that he had violated certain terms of his community control.
 {¶ 8} On May 16, 2005, Appellant appeared with counsel and admitted that he had violated the terms of his community control. (5/16/05 T. at 7). The trial court continued Appellant's community control with the additional term that Appellant attend and successfully complete an in-patient drug treatment program. Id. While making this order the trial judge addressed the Appellant:
 {¶ 9} "Mr. Meadows, you need to take this opportunity and make this the last time that you come before the Court on a motion to revoke community control. Typically, on a case of this nature involving very serious offenses such as burglary and felonious assault, the next step in the revocation process is that you'll be sent back to a state penal institution. I can't promise that that would be the result, but the Court is giving you an opportunity here to show everyone, yourself and your family, that you can get your priorities straight." Id. at 8.
 {¶ 10} The trial court ordered Appellant held in the Fairfield county jail until an appropriate treatment facility could be located. (5/16/05 T. at 8).
 {¶ 11} Appellant remained in jail from May until July 25, 2005, at which time he entered the Teen Challenge Drug Treatment facility. (Rev. Hrng. T. at. 34). Appellant left Teen Challenge after one week (Rev. Hrng. T. at 34-35).
 {¶ 12} On August 3, 2005, the State filed a second motion to revoke Appellant's community control alleging that Appellant had failed to complete the in-patient counseling.
 {¶ 13} On August 9, 2005, October 3, 2005, and October 21, 2005, hearings were held on said Motion. (Revocation Hearing T. at 482).
 {¶ 14} At said hearing Appellant claimed that his probation officer implied it was permissible for him to leave the facility. (Rev. Hrng. T. at 34-35). Appellant testified that he selected Teen Challenge as a treatment facility on a recommendation from a friend and admitted that he knew that in order to prevent being sent to prison, he needed to complete Teen Challenge. (Rev. Hrng. T at 36-38).
 {¶ 15} Charles Rispress, Appellant's probation officer, was unavailable at the first hearing so the trial court continued the hearing in order to allow for his testimony. (Rev. Hrng. T. at 51).
 {¶ 16} On October 21, 2005, the parties appeared in Court. (Rev. Hrng. T. at 53). While discussing a possible resolution of the case Appellant stated, "Yeah. I'd like to say that man right there is a bold-faced liar. He didn't tell me — he said he told me on the phone. You're a liar. That's all." (Rev. Hrng. T. at 55).
 {¶ 17} Appellant then called Mr. Rispress as a witness. (Rev. Hrng. T. at 56). While being questioned by Appellant's counsel, Mr. Rispress stated that during the telephone conversation which took place on August 1, 2005, he informed Appellant that if Appellant left the facility he would be going to jail. (Rev. Hrng. T. at 60). Mr. Rispress had also informed Appellant of that fact by letter. Id. According to Mr. Rispress both he and the in-take manager for the program tried to encourage Appellant to stay at the program. (Rev. Hrng. T. at 61).
 {¶ 18} According to Mr. Rispress, Appellant was the person that selected Teen Challenge and that he informed Appellant that it was a difficult nine to twelve month program. (Rev. Hrng. T. at 63). Mr. Rispress stated that he was positive that he did not give Appellant permission to leave Teen Challenge because the only other alternative was jail. (Rev. Hrng. T. at 66). Mr. Rispress testified that he told Appellant more than once that Teen Challenge was his last chance and that he was facing seven years incarceration if he failed to complete the program. Id.
 {¶ 19} The trial court in announcing its decision stated:
 {¶ 20} "THE COURT: With regard to the Court's finding as to whether or not you have violated the terms and conditions of community control, Mr. Meadows, the Court finds that there is sufficient evidence for the Court to make the finding that you did violate the terms and conditions of community control by not successfully completing the program that you were ordered to attend, and, in fact, you had requested to go to as a result of the disposition of the previous motion to revoke; and that you were given the opportunity to go to the program; that you enrolled in the program and were there for approximately seven days; and that you left on your own accord and without permission or authorization from Mr. Rispress or anyone in authority to grant you the permission to do so.
 {¶ 21} "So it's clear to me that the State has met its burden to show that you have violated the terms and conditions of community control in that regard." (Rev. Hrng. T. at 71-72).
 {¶ 22} The Court also determined that Appellant acted impulsively and failed to appreciate the opportunity the trial court had given Appellant. (Rev. Hrng. T. at 79).
 {¶ 23} Based upon the information presented to the trial court, the trial court found the State's motion well-taken and ordered Appellant's remaining seven year prison sentence into execution. (Entry Nunc Pro Tunc 7/18/06).
 {¶ 24} It is from this decision Appellant appeals, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 25} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN FINDING THAT THE DEFENDANT-APPELLANT WAS IN VIOLATION OF HIS PROBATION AS THE COURT'S FINDINGS WERE AGAINST THE SUBSTANTIAL WEIGHT OF EVIDENCE.
 {¶ 26} "II. DEFENDANT-APPELLANT WAS DENIED FUNDAMENTAL DUE PROCESS OF LAW WHEN HE WAS DENIED THE RIGHT TO CONFRONT AND CROSS-EXAMINE ADVERSE WITNESSES."
 I. {¶ 27} In his first assignment of error, Appellant argues that the trial court erred in finding that he was in violation of his probation. We disagree.
 {¶ 28} In a probation revocation proceeding, the prosecution need not produce evidence establishing a probation violation beyond a reasonable doubt. Rather, the prosecution must present substantial proof that a defendant violated the terms of his or her probation. State v. Hylton (1991), 75 Ohio App.3d 778,600 N.E.2d 821; State v. Mingua (1974), 42 Ohio App.2d 35,327 N.E.2d 791; State v. Umphries (June 30, 1998), Pickaway App. No. 97CA45, unreported. Accordingly, in order to determine whether a defendant's probation revocation is supported by the evidence, a reviewing court should apply the "some competent, credible evidence" standard set forth in C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. See State v.Umphries (July 9, 1998), Pickaway App. No. 97CA45; State v.Puckett (Nov. 12, 1996), Athens App. No. 96CA1712. This highly deferential standard is akin to a preponderance of evidence burden of proof. See State v. Kehoe (May 18, 1994), Medina App. No. 2284-M. We see no difference in the standard of review between a probation violation and a violation of community control sanctions.
 {¶ 29} Once a court finds that a defendant violated the terms of probation, the decision whether to revoke probation lies within the court's sound discretion. See State v. Scott (1982),6 Ohio App.3d 39, 452 N.E.2d 517; Umphries, supra; State v.Conti (1989), 57 Ohio App.3d 36, 565 N.E.2d 1286; State v.Daque (Aug. 11, 1997), Ross App. No. 96CA2256. Thus, a reviewing court will not reverse a trial court's decision absent an abuse of discretion. State v. Sheets (1996), 112 Ohio App.3d 1,677 N.E.2d 818.
 {¶ 30} Upon review, we find that the record establishes that Appellant violated the conditions of his probation in that the trial court's Judgment Entry of May 27, 2005, states:
 {¶ 31} "(1)The defendant shall attend and successfully complete an in-patient drug treatment program."
 {¶ 32} As Appellant failed to complete said program by leaving after only seven days, Appellant violated the conditions of his probation.
 {¶ 33} Appellant's argument that he thought he could leave and be placed into a different program because he was not satisfied with the care he was receiving was ill-founded and is not supported by the record.
 {¶ 34} Based on the foregoing, we find Appellant's first assignment of error not well-taken and overrule same.
 II. {¶ 35} In his second assignment of error, Appellant argues that he was denied the right to confront and cross-examine adverse witnesses. We disagree.
 {¶ 36} Specifically, Appellant argues that it was error for the trial court to allow into evidence the letter written to Probation Officer Rispress by Anthony Skipworth of Teen Challenge stating that Appellant had left the Teen Challenge program.
 {¶ 37} Appellant argues that because Mr. Skipworth was not at either of the hearings held in this matter, he was not given an opportunity to cross-examine and/or confront Anthony Skipworth regarding same.
 {¶ 38} A revocation hearing is not a criminal trial, the State only has to introduce evidence showing that it was more probable than not that the person on probation or community control violated the terms or conditions of the same. See Statev. Stockdale (Sept. 26, 1997), Lake App. No. 96-L-172.
 {¶ 39} The rules of evidence, including hearsay rules, are expressly inapplicable to a revocation hearing. Evid.R. 101(C)(3). The rationale for this exception is that a trial court should be able to consider any reliable and relevant evidence indicating whether the probationer has violated the terms of probation, since a probation or community control revocation hearing is an informal proceeding, not a criminal trial.Columbus v. Bickel (1991), 77 Ohio App.3d 26, 36,601 N.E.2d 61, citing State v. Miller (1975), 42 Ohio St.2d 102, 106,326 N.E.2d 259. However, in Gagnon v. Scarpelli (1973),411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656, the United States Supreme Court held that the due process requirements ofMorrissey v. Brewer (1972), 408 U.S. 471, 92 S.Ct. 2593,33 L.Ed.2d 484, with regard to parole violation hearings, were applicable to probation revocation proceedings. The minimal due process requirements for final revocation hearings include:
 {¶ 40} "`(a) [W]ritten notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole."' Id., citing Morrissey, supra, at 489.
 {¶ 41} The confrontation right at issue in revocation cases does not arise by virtue of the substantive provisions of the Sixth Amendment, but is rather a procedural protection guaranteed by the Fourteenth Amendment. Columbus v. Lacy (1988),46 Ohio App.3d 161, 546 N.E.2d 161, citing Morrissey, supra, at 477-480.
 {¶ 42} At a probation revocation hearing, due process requires the direct testimony of the probation officer who prepared the defendant's statement of probation violation unless the record shows good cause for the officer's absence from the hearing. Lacy, supra, at paragraph one of the syllabus. However, Ohio courts have recognized that "harmless error" analysis applies to a claim of confrontation right violations. See, e.g., State v. Davis, Cuyahoga App. No. 85477,2005-Ohio-5544, ¶ 29, citing Delaware v. Van Arsdall,475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674. Thus, where a defendant's admissions are sufficient by themselves to prove a violation of conditions of probation, it is harmless error even if some of the evidence admitted by the trial court was impermissible. See State v. Stephens (May 28, 1999), Huron App. No. H-98-045.
 {¶ 43} In the case sub judice, Appellant is arguing that the Teen Challenge Admissions coordinator's letter should not have been allowed into evidence.
 {¶ 44} Upon review of the record, we find no error in allowing such letter into evidence especially when defendant's admissions are sufficient by themselves to prove a violation of conditions of probation.
 {¶ 45} Based on the foregoing, we find Appellant's second assignment of error not well-taken and overrule same.
 {¶ 46} The decision of the Fairfield County Court of Common Pleas is affirmed.
Boggins, J. Wise, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas, Fairfield County, Ohio, is affirmed. Costs assessed to Appellant.