UNITED STATES of America,
Plaintiff-Appellee,

v.

Edward Eugene PENN,
Defendant-Appellant.

No. 82–7402.

United States Court of Appeals,
Eleventh Circuit.

Dec. 19, 1983.

Stephen W. Shaw, Birmingham, Ala., for defendant-appellant.

Herbert H. Henry, III, Asst. U.S. Atty., Chief, Crim. Section, Birmingham, Ala., for plaintiff-appellee.

Before GODBOLD, Chief Judge, RONEY and SMITH *, Circuit Judges.

GODBOLD, Chief Judge:

Penn appeals from the judgment of the district court revoking his probation. His appeal raises two issues: whether the introduction of hearsay evidence during the revocation proceeding infringed on his constitutional right to confront and cross-examine witnesses, and, assuming the hearsay was admissible, whether the trial court abused its discretion in revoking probation. We find no error in admission of the hearsay and affirm the revocation order.

I. FACTS

In 1978 Penn pleaded guilty to theft of a check from the United States mails. He was placed on probation for five years on the usual general conditions; special conditions were that he should make restitution of the amount of the check, that he should be regularly employed during probation, and that he was not to be involved with firearms.

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

A jury found Penn guilty in 1980 of illegal possession of four Valium tablets, and the conditions of his probation were modified accordingly: he was required to submit to urine drop testing as directed by his probation officer. In 1981, on petition of Penn's probation officer, Busby, Penn's probation conditions were modified again to include requirements that he participate in both a residential community treatment program and a drug aftercare treatment program.

Busby filed for revocation of Penn's probation in 1982, alleging as violations of the conditions of probation that he had been in a state of public intoxication in violation of the city code of Birmingham, that he had violated the drug aftercare conditions by having within his body on several occasions Talwin (a controlled substance) or THC (the active ingredient in marijuana), and that he had been in possession of a stolen and forged check for $290 drawn on the account of Cameron Furniture Co.

Penn waived his right to a preliminary hearing, and at the revocation proceeding evidence centered on the drug and stolen check allegations.[1] Busby gave the only testimony regarding the drug charge. He said that he had received a urine sample from Penn during July 1981 and had requested that the sample be tested for evidence of drugs. When the government sought to elicit from Busby the results of the urine test, Penn's counsel objected, based on *U.S. v. Caldera*, 631 F.2d 1227 (5th Cir.1980) (per curiam). The court held that *Caldera* was distinguishable, and Busby was allowed to testify to the results of the July 1981 test as well as several others. According to Busby, urine samples taken from Penn (on July 14, 1981, February 16, 1982, May 10, 1982, and September 20, 1982) tested positive for Talwin. After this testimony, the court admitted the lab reports from Fairfield Medical Laboratories, a lab in Connecticut, subject to Penn's continuing objection. The court also admitted an unsworn letter from the laboratory that summarized the results. The letter indicated "that at least five people participated in the analysis of each urine specimen." 1 Supp. Record at 13. On cross-examination Busby admitted that Penn had submitted to more than 50 such urine tests, that Busby had taken only one of these samples himself, and that all others had been taken by another officer at Busby's request.

Penn's only witness gave testimony that went to the appropriateness of revocation as a sanction rather than to the specifics of either of the two offenses.

## II. ADMISSIBILITY OF HEARSAY

We must decide whether *U.S. v. Caldera*, 631 F.2d 1227 (5th Cir.1980) (per curiam), compels us to hold that admission of Busby's hearsay testimony as to the results of the urinalysis tests was reversible error. We find *Caldera* distinguishable and hold that it does not.

*Caldera* is a one-paragraph per curiam opinion. The stated facts, although sketchy, indicate that at Caldera's probation revocation hearing a police officer was permitted to testify as to the results of a field test and a laboratory test, both of which proved positive for cocaine. The police officer had not participated in the preparation or analysis of the tests. The court remanded for another evidentiary hearing that would comport more fully with Caldera's right to confront and cross-examine witnesses against him. *Id.* The only authority cited in *Caldera* was *U.S. v. Cain*, 615 F.2d

---

1. At the hearing the government conceded that its evidence on the THC charge was inadequate and stated that it was not relying on the public intoxication allegation. Several witnesses testified on the stolen and forged check charge. Sergeant Borella of the Birmingham Police Department testified over objection that her investigation of a theft of checks from an automobile had revealed that Penn had cashed one of the checks at a grocery store. Borella's statement that the check was stolen was hearsay, and Penn suggests that its admission also was error. Because we decide that the admission of Busby's hearsay testimony was not error, and that Penn's probation was lawfully revoked on the basis of the drug offense alone, we do not decide whether the police officer's hearsay statement that the check was stolen is admissible.

380 (5th Cir.1980), which involved a criminal trial, not a probation revocation proceeding.[2]

It was only after the revocation proceeding at issue in *Caldera* had been held that Fed.R.Crim.P. 32.1 was adopted. This rule provides that at a revocation hearing, a probationer has certain procedural rights, which include

   (A) written notice of the alleged violation of probation;

   (B) disclosure of the evidence against him;

   (C) an opportunity to appear and to present evidence in his own behalf;

   (D) the opportunity to question witnesses against him; and

   (E) notice of his right to be represented by counsel.

The Advisory Committee Notes accompanying Rule 32.1(a)(2) state that a revocation hearing is informal and that evidentiary rules should be applied in a flexible manner.

> The hearing required by rule 32.1(a)(2) is not a formal trial; the usual rules of evidence need not be applied.

The adoption of Rule 32.1 demonstrates a legislative intent that probation revocation proceedings be conducted without the evidentiary formalities that characterize a criminal trial. *See also* Fed.R.Evid. 1101(d): "The rules [of evidence] (other than with respect to privileges) do not apply in the following situations: ... granting or revoking probation...." This intent, however, has limits in the Sixth Amendment confrontation clause, since in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court held that the confrontation clause, as incorporated by the due process clause of the Fourteenth Amendment, requires that probationers and parolees have some right to confront and cross-examine the witnesses against them. *Morrissey* said that parolees have "the right

to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." 408 U.S. at 489, 92 S.Ct. at 2604. At the same time, however, the process was to be flexible enough for the court to consider documentary evidence that would not meet the usual evidentiary requirements that apply to criminal trials. *Id.* *Gagnon* held that a probationer is entitled to the same procedural rights as were held applicable to parolees in *Morrissey.* 411 U.S. at 782, 93 S.Ct. at 1759. In dicta, the *Gagnon* court added:

> An additional comment is warranted with respect to the rights to present witnesses and to confront and cross-examine adverse witnesses. Petitioner's greatest concern is with the difficulty and expense of procuring witnesses from perhaps thousands of miles away. While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes, including affidavits, depositions, and documentary evidence.

411 U.S. at 783 n. 5, 93 S.Ct. at 1760 n. 5.

What these Supreme Court cases indicate is that the hearing officer in a probation revocation proceeding must balance the probationer's right to confront and cross-examine witnesses against any good cause asserted by the government for not allowing confrontation. *See Baker v. Wainwright,* 527 F.2d 372, 378 (5th Cir.1976) (quoting *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604) (footnote omitted):

> The *Morrissey* exception to the right of confrontation and cross-examination applies to cases where "the hearing officer specifically finds good cause for not allowing confrontation." In order to come within the exception there must be an explicit, specific finding of such good cause, and the reasons should be stated in the record of the revocation hearing.

---

**2.** *Cain* held that prejudicial hearsay is inadmissible to convict a defendant since it violates his

confrontation rights.

We do not establish any boundaries for what does or does not constitute sufficient good cause. Obviously, since this is a balancing test, there can be no fixed rules on what would constitute good cause in every case. As the Supreme Court noted in *Gagnon,* "in some cases there is simply no adequate alternative to live testimony." 411 U.S. at 783 n. 5, 93 S.Ct. at 1760 n. 5. Thus, the trial court must weigh the defendant's interest in confronting a particular witness against the good cause shown by the government and then make a determination as to the appropriateness of admitting the hearsay.

The *Gagnon* dictum suggests several grounds for finding good cause. The difficulty and expense of procuring live witnesses would not suffice as an excuse for admitting hearsay testimony in a criminal trial, but the Court tenders this as an example of a situation in which hearsay could be admissible in a probation revocation proceeding. Likewise, the Court recommends the conventional substitutes for hearsay: affidavits, depositions and documentary evidence. These conventional substitutes tend to bear the "indicia of reliability" upon which the Court has focused in the related context of determining whether a given hearsay statement should be admissible in a criminal trial. *See Ohio v. Roberts,* 448 U.S. 56, 65–68, 100 S.Ct. 2531, 2538–2540, 65 L.Ed.2d 597 (1980); *Dutton v. Evans,* 400 U.S. 74, 88–89, 91 S.Ct. 210, 219–220, 27 L.Ed.2d 213 (1970) (plurality opinion).

Other circuits, faced with the issue of whether a given hearsay statement is admissible in a probation revocation proceeding, have tended to focus on these indicia of reliability. In *U.S. v. McCallum,* 677 F.2d 1024, 1026–27 (4th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 365, 74 L.Ed.2d 400 (1982), the court held that a report from the probationer's caseworker at the Salvation Army center that explained why the probationer had lost his job and been expelled from the center was admissible. The report was reliable, it was partially corroborated by the probationer's admissions, and he had not disputed the accuracy of the information in the report. *Id.* Similarly, in *U.S. v.*

*Burkhalter,* 588 F.2d 604, 607 (8th Cir.1978), a letter from the probationer's vocational school instructor and hearsay testimony from his caseworker were held admissible on the ground that "hearsay evidence which is demonstratively reliable need not be subject to cross-examination or confrontation in a revocation proceeding." *Accord U.S. v. Pattman,* 535 F.2d 1062 (8th Cir.1976) (per curiam); *see also Ryan v. Montana,* 580 F.2d 988, 992–93 (9th Cir.1978), *cert. denied,* 440 U.S. 977, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979) (good cause); *Prellwitz v. Berg,* 578 F.2d 190, 192–93 (7th Cir.1978) (conventional substitute for live testimony; sufficient indicia of reliability); *U.S. v. Smith,* 571 F.2d 370, 373–74 & n. 4 (7th Cir.1978) (per curiam) (conventional substitutes with recognized indicia of reliability; documents from police or court files); *U.S. v. Miller,* 514 F.2d 41, 42 (9th Cir.1975) (per curiam) (reliable hearsay).

■ The court below found good cause for admitting the hearsay statements of Busby and the hearsay exhibits (the lab reports and the letter from the president of the lab) because they were "trustworthy and reliable." Generally, a determination of the admissibility of evidence rests within the sound discretion of the trial court, and will not be disturbed on appeal absent a clear showing of an abuse of discretion. *U.S. v. Russell,* 703 F.2d 1243, 1249 (11th Cir.1983). In the present case, however, the court's determination that the evidence was admissible was based on its preliminary factual determination that the hearsay was reliable proof of whether Penn had used drugs on the specified occasions. *See* Fed. R.Evid. 104(a). Factfinding by trial judges in criminal cases is the subject of Fed.R. Crim.P. 23(c) which, unlike its civil counterpart, *see* Fed.R.Civ.P. 52(a), does not enunciate a clearly erroneous standard for review of such findings. Nevertheless, it is generally agreed that the clearly erroneous test should be applied to factual findings by judges on matters other than guilt. *See Campbell v. U.S.,* 373 U.S. 487, 493, 83 S.Ct. 1356, 1360, 10 L.Ed.2d 501 (1963); *U.S. v. Dayton,* 604 F.2d 931, 940 n. 14 (5th Cir.

1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980); 2 C. Wright, Federal Practice and Procedure § 374 (2d ed. 1982).

■ We hold that the trial court's determination that Busby's testimony and the exhibits were trustworthy and reliable was not clearly erroneous. The court's finding was a reasonable one, since laboratory reports such as those at issue here are the regular reports of a company whose business it is to conduct such tests. The laboratory expects its clients to act on the basis of its reports, and doctors and hospitals do so act. Although Penn objects to Busby's testimony summarizing the results of those urine tests, this testimony was in the nature of an outline of what the exhibits themselves actually showed, restating what was contained in the exhibits.

Although there was no corroboration of the specific results of the individual lab reports, there was general corroboration of the allegation that Penn had been taking drugs. Busby testified that he had placed Penn in a halfway house on two different occasions, "[a]nd on both of those occasions, [Busby] asked him if he would accept a referral to a local drug treatment program for additional counseling and guidance. [Penn] said that he did not wish to participate in such a program, that his use of drugs was recreational." 1 Supp. Record at 16. Penn does not deny, and did not controvert in any way, the charge that he had had illegal drugs in his body on the specific occasions alleged. He merely seeks to rely on his asserted right to confront and cross-examine the individuals who actually performed the laboratory tests. The letter from the lab indicated, however, that at least five different people performed each test, and, at the revocation hearing, it was estimated by the government that it would have been necessary to obtain the presence and testimony of 20 to 30 people from the Connecticut lab to satisfy Penn's request. We think that this exemplifies what the *Gagnon* court was concerned about when it spoke of the difficulty and expense of procuring distant witnesses. *See* 411 U.S. at 783 n. 5, 93 S.Ct. at 1760 n. 5.

In light of our holding that the district court was not clearly erroneous in finding that the hearsay evidence of Penn's drug usage was reliable, we also conclude that the court did not abuse its discretion in admitting that hearsay into evidence at the revocation hearing. In the absence of any evidence tending to contradict Penn's drug usage or the accuracy of the lab tests, his confrontation rights were not infringed by the admission of Busby's testimony or the exhibits. In balancing Penn's right to confront and cross-examine the witnesses against him against the good cause asserted by the government, the court found good cause for admitting the evidence—its reliability—and so stated in its order. This conformed to the constitutional principles explicated in *Gagnon* and *Morrissey.*

### III. APPROPRIATENESS OF REVOCATION

■ Accepting that the hearsay was admissible, the court did not abuse its discretion in revoking Penn's probation. "In a probation revocation proceeding, all that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation; evidence that would establish guilt beyond a reasonable doubt is not required." *U.S. v. Rice,* 671 F.2d 455, 458 (11th Cir.1982). We will only reverse the revocation of probation where there has been an abuse of discretion by the district court, *U.S. v. O'Quinn,* 689 F.2d 1359, 1361 (11th Cir. 1982), and there was no abuse here.

The terms of Penn's probation required that he refrain from ingesting illegal drugs. The evidence introduced at the hearing showed that he had taken drugs on several occasions. The district court correctly ruled that the evidence provided a basis for revoking Penn's probation. Moreover, the court noted that a finding that Penn had committed either of the offenses alleged would have resulted in revocation. Although Penn argues that he is a suitable

candidate for rehabilitation without incarceration, the evidence in support of this contention was before the district court, which found it unpersuasive.

AFFIRMED.