**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alex BROWN, Defendant-Appellant.**

**No. 16-15102
Non-Argument Calendar**

United States Court of Appeals,
Eleventh Circuit.

(April 18, 2017)

John C. Shipley, Assistant U.S. Attorney, Wifredo A. Ferrer, Lisa Tobin Rubio, Emily M. Smachetti, U.S. Attorney's Office, Miami, FL, Bruce Brown, U.S. Attorney's Office, Fort Lauderdale, FL, for Plaintiff-Appellee

Ricardo Bascuas, University of Miami School of Law, Coral Gables, FL, Arun Gopal Ravindran, Michael Caruso, Federal Public Defender, Federal Public Defender's Office, Miami, FL, for Defendant-Appellant

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Alex Brown appeals the revocation of his term of supervised release. *See* 18 U.S.C. § 3583(e)(3). He advances two main arguments on appeal: (1) the district court violated his due-process rights by admitting unreliable hearsay evidence at his revocation hearing; and (2) the evidence was insufficient to show that he violated the terms of his supervised release. After careful review, we affirm.

## I.

In 2013, Brown pled guilty to one count of possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He was sentenced to 37 months of imprisonment followed by a term of three years of supervised release. Brown began serving his term of supervised release in February 2016.

Less than two months later, Brown's probation officer filed a petition to revoke his supervised release, and the court issued a warrant for his arrest. The probation officer alleged that Brown had violated his supervised release by committing the following four offenses under Florida law: eluding law enforcement, driving without a valid driver's license, driving recklessly, and resisting an officer without violence. Brown contested the allegations and appeared at a revocation hearing, where he was represented by counsel.

During the revocation hearing, Miami-Dade Police Detective Thomas Weber testified that, while on patrol on the night of March 21, 2016, he saw a car nearly strike a bus, take evasive action, and then drive in the wrong lane. Weber pursued the car and activated his overhead lights to conduct a traffic stop. Instead of stopping, the car sped up, went through at least two stop signs in a residential area, drove in the wrong lane of a road, and eventually pulled up in front of a residence. Once it stopped, two black males, the driver and the back seat passenger, fled from the car on foot and jumped a fence. A passenger in the front seat stayed put.

Weber testified that he pulled up behind the parked car, got out, and attempted to chase the fleeing suspects. The suspects got away, however, and the car was gone when Weber returned. Weber then went to the address of the car's registered owner, which he had obtained during pursuit of the car. The car was parked in the driveway. As Weber approached the residence on foot, the registered owner, Latoya London, came outside to speak with him.

The government asked Weber what details London had given him. Brown objected that whatever London told the officer was hearsay and should not be admitted. Brown cited this Court's decision in *United States v. Frazier*, 26 F.3d 110 (11th Cir. 1994), and asserted that he "ha[d] a right to due process, and for the Court to consider hearsay or rely upon it, there needs to be a balancing done to determine what, if anything, the Government has done to locate the absent declarant."

In response, the government asked Weber to testify about his efforts to locate London for purposes of the hearing. Weber stated that he attempted to contact London at the same address, but she was not there. A woman at the residence told him that London had moved to the Orlando area and was not going to return for any portion of the case. The woman stated that she did not have London's contact information. Based on Weber's testimony, the court overruled the hearsay objection and allowed London's statements in as evidence.

According to Weber's testimony, London stated that on the night of the incident, Brown was driving her car when a police car attempted to pull them over. London, her child, and another person were in the car at the time. London identified Brown as the father of her child, though they were no longer in a relationship. When Brown saw the police car, he stated that he was not going back to jail for his license. London asked him to stop, but Brown sped up and turned into a neighborhood before pulling over to the side of the road and running from the car. London did not stay on the scene because her child was in the car and she was worried about her safety in the area. With London's permission, Weber searched the vehicle and located Brown's Florida identification and his U.S. Probation identification.

In closing arguments, Brown's counsel argued that London's hearsay statements were unreliable because they were inconsistent with the events Weber personally observed, such as the number of persons in the car. Brown also contended that London had a motive to lie because of an ongoing paternity dispute, and that it defied common sense for London to leave the scene while Weber was chasing the other suspects.

The district court disagreed that London's statements were unreliable, determining that sufficient evidence showed by a preponderance of the evidence that Brown had committed the offenses of fleeing and eluding a police officer and reckless driving. The court reasoned that it was appropriate to accept London's statement that Brown was the driver even if London and Brown had a dispute. The court found Brown not guilty of the other alleged violations.

The district court calculated an advisory guideline range of 6 to 12 months of imprisonment, based on a criminal history

category of IV and a Grade C violation, with a statutory maximum of 24 months of imprisonment. The government recommended a sentence of 12 months; Brown requested 6 months. After reviewing Brown's extensive criminal history and the proof of his conduct in this case, the court concluded that an above-guideline sentence was appropriate. Accordingly, the court sentenced Brown to the maximum of 24 months, with no supervised release to follow. Brown now appeals.

## II.

We review a district court's revocation of a term of supervised release for an abuse of discretion. *Frazier,* 26 F.3d at 112. We generally review the sufficiency of the evidence *de novo. United States v. Capers,* 708 F.3d 1286, 1296 (11th Cir. 2013).

Under 18 U.S.C. § 3583(e)(3), a district court may revoke a term of supervised release where the government has proved by a preponderance of the evidence that the defendant has violated a condition of his supervised release. *United States v. Sweeting,* 437 F.3d 1105, 1107 (11th Cir. 2006). The government must meet this burden with reliable and specific evidence. *United States v. Sepulveda,* 115 F.3d 882, 890 (11th Cir. 1997).

Although the Federal Rules of Evidence do not apply in supervised release revocation proceedings, defendants are entitled to minimal due-process requirements, including the right to confront and cross-examine adverse witnesses. *Frazier,* 26 F.3d at 114. An exception to the right of confrontation and cross-examination applies where the court finds "good cause" for not allowing confrontation. *See id.; United States v. Penn,* 721 F.2d 762, 764 (11th Cir. 1983). "In order to come within the exception there must be an explicit,

specific finding of such good cause, and the reasons should be stated in the record of the revocation hearing." *Penn*, 721 F.2d at 764 (quoting *Baker v. Wainwright*, 527 F.2d 372, 378 (5th Cir. 1976)); *see also United States v. Copeland*, 20 F.3d 412, 414-15 (11th Cir. 1994) (holding that due process requires the district court to state on the record the reasons for the revocation of supervised release and the evidence relied upon). Thus, before admitting hearsay statements, "the court must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation." *Frazier*, 26 F.3d at 114.

On the defendant's side of the balance, the weight of his right to confrontation is substantial where the hearsay evidence is important to the district court's findings, and he does not have an opportunity to refute the evidence by other means. *See United States v. Martin*, 984 F.2d 308, 311–12 (9th Cir. 1993), cited with approval in *Frazier*, 26 F.3d at 114. On the government's side, good cause for admitting hearsay can exist in cases where it would be difficult or expensive to procure live witnesses. *Penn*, 721 F.2d at 765.

Also relevant to the balance is the reliability of the hearsay statements. *See id.* at 765–66; *Frazier*, 26 F.3d at 114 ("[T]he hearsay statement must be reliable."); *cf. United States v. Taylor*, 931 F.2d 842, 847 (11th Cir. 1991) ("Admission of hearsay evidence in probation hearings does not violate due process, as long as it bears some indicia of reliability."). So the court may rely on the reliability of the hearsay evidence in evaluating whether confrontation is required. *See Penn*, 721 F.2d at 766 ("In balancing Penn's right to confront and cross-examine the witnesses against him against the good cause asserted by the

government, the court found good cause for admitting the evidence—its reliability—and so stated in its order. This conformed to the constitutional principles explicated [by the Supreme Court]."). The court's findings as to the reliability of hearsay evidence in revocation proceedings are reviewed for clear error. *Id.*

Here, the district court did not err in admitting London's hearsay statements because, although Brown's right to confrontation was substantial given the importance of the evidence, the court appropriately balanced his right against the government's reasons for denying confrontation and the reliability of the hearsay. Because the hearsay evidence, combined with Weber's personal testimony, was sufficient to support the court's findings that Brown violated the terms of his supervised release, we affirm.

■ Brown's right to confrontation was substantial because the record clearly shows that the hearsay evidence was critical to the district court's findings that he violated the terms of his supervised release. London's hearsay statements provided the only evidence that Brown was the driver of the car that recklessly fled from police, and the court expressly relied on this evidence in sustaining the violations.[1] *See Taylor*, 931 F.2d at 847. Nevertheless, Brown was able to cross-examine Weber about his conversation with London, so he was not completely denied an opportunity to challenge London's statements, even if the opportunity was limited. *See Martin*, 984 F.2d at 312.

While the district court did not explicitly use the words "good cause" or fully explain its balancing analysis, the record shows that the court balanced (a) the government's efforts to contact London and (b)

1. Thus, this is not a case in which we can say that any error committed by the court in introducing the hearsay statements was harmless. *See, e.g., Frazier*, 26 F.3d at 114.

the reliability of London's statements against Brown's right of confrontation. Following Brown's hearsay objection, which specifically referenced the balancing test in *Frazier*, the government elicited testimony from Weber about his efforts to locate London, the absent declarant. Based on Weber's testimony, the court allowed Weber to testify as to the hearsay statements. Then, in closing arguments, the district court responded to and disagreed with defense counsel's various arguments challenging the reliability of the hearsay. Therefore, the record shows that the court conducted the balancing inquiry mandated by *Frazier* and adequately explained its reasoning for admitting and relying upon the hearsay evidence over Brown's objections. *See Frazier*, 26 F.3d at 114; *Penn*, 721 F.2d at 764. To require more from the court in the circumstances of this case would be unduly formalistic.

With regard to the first factor, as we have noted, the government can establish good cause when it would be difficult or expensive to procure live witnesses. *Penn*, 721 F.2d at 765. Here, the government provided some evidence, through Weber's testimony, showing that it would have been difficult or expensive to procure London for the hearing, even if Brown is correct that the government could have done more to locate her. Weber's testimony reflected that he went to London's last known address but was told that she had moved to the "Orlando area" and did not plan to return for the case. The government efforts were reasonable under the circumstances; it did not need to exhaust every available measure to locate a recalcitrant witness about whom it had only vague information as to her location.

More significantly, the district court did not clearly err in finding that London's hearsay statements were reliable. *See id.* at 766. Brown argues that the evidence

was unreliable because it was uncorroborated and London had a motive to lie. He asserts that London was a suspect, her own license was suspended, she had prior convictions, including for theft, she had a prior relationship with Brown and an ongoing paternity dispute with him, and she implausibly claimed to be unable to identify the other person in the car. Brown also asserts London contradicted the officer's testimony as to the number of people in the car. We find Brown's arguments unpersuasive.

This Court has recognized several factors that bear upon the trustworthiness of a hearsay statement, including the circumstances in which it was made, the motivation of the declarant, the knowledge and qualification of the declarant, and the existence of corroborating evidence. *See Rivers v. United States*, 777 F.3d 1306, 1315 (11th Cir. 2015) (discussing factors relevant to determining trustworthiness under the residual hearsay exception, Fed. R. Evid. 807).

Here, London's statements bear sufficient indicia of reliability to justify the court's reliance. First, the circumstances in which London's statements were made support their reliability. London's statement that Brown was the driver was based on direct observation and personal knowledge; she made the statement only a brief time after the incident occurred, *see United States v. Reme*, 738 F.2d 1156, 1168 (11th Cir 1984) (statements closer in time to the events at issue are more likely to be reliable); she was speaking to an officer conducting an investigation; and she prepared a contemporaneous sworn statement, which we have no reason to believe was inconsistent with her statement to Weber, *see United States v. Chapman*, 866 F.2d 1326, 1331 (11th Cir. 1989) ("[W]e

believe that the fact that [the declarant] knowingly made the statements to public officials who would begin an investigation to ascertain the truth of her statements lends some reliability to the statements.").

Second, far from being "uncorroborated," London's story was almost entirely consistent with Weber's eyewitness testimony about the sequence of events once Weber attempted to pull over London's car. The only difference Brown identifies between Weber's and London's stories is the number of occupants in the car, and that difference is minor and easily explainable. Given that Weber was chasing the vehicle at night from behind, it is unlikely that he would have been able to see a child in the backseat of the car. Because London's story was otherwise consistent with Weber's testimony, the lack of independent corroboration for her statement that Brown was the driver does not strongly undermine the reliability of the statement.

Third, Brown's suggestion that London herself was the driver is inconsistent with Weber's testimony, the credibility of which he does not challenge. Weber testified that he observed two males fleeing the car once it stopped, while another person remained in the front passenger seat. Likewise, London stated that Brown, the driver, fled the vehicle once it stopped, while she remained in the car with her child. And Weber found Brown's identification cards in the car shortly after the incident, which is consistent with Brown's quick flight from the car. Brown does not dispute that he was in the car, and he put forward no evidence to show why he would have fled from the car for reasons independent of reckless driving and eluding the police, so it is reasonable

to conclude that Brown fled because he was the driver, as London stated.

Finally, Brown's arguments regarding London's motivations are not sufficient to show that the court clearly erred in finding the hearsay reliable. While London and Brown may have had an ongoing paternity dispute, the record does not disclose any specific facts about this dispute that would shed light on London's motivations, specifically why she would want to blame Brown for something he did not do. Brown's other contentions about London's motivations are largely tangential and are not sufficient to cast substantial doubt on her statement that Brown was the driver, for the reasons explained above.

■ In sum, we hold that the district court did not violate Brown's due-process rights by admitting and relying upon London's hearsay statement that Brown was the driver of a car that recklessly fled from Weber's police car.[2] The record shows that the court considered the importance of this statement, the government's reasons for denying confrontation, and the reliability of the hearsay evidence. *See Frazier*, 26 F.3d at 114; *Penn*, 721 F.2d at 766. Further, the court adequately stated on the record the reasons for the revocation of supervised release and the evidence relied upon. *See Copeland*, 20 F.3d at 414–15; *Penn*, 721 F.2d at 764. Because London's statements were reasonably trustworthy, the hearsay evidence combined with Weber's testimony provided sufficient evidence for the court to find by a preponderance of the evidence that Brown violated the terms of his supervised release. *See Sweeting*, 437 F.3d at 1107; *Sepulveda*, 115 F.3d at 890.

Accordingly, we affirm the revocation of

---

**2.** To the extent Brown argues that his Sixth Amendment rights were violated, we have held that the Sixth Amendment does not ap-
ply in supervised-release revocation hearings. *United States v. Reese*, 775 F.3d 1327, 1329 (11th Cir. 2015).

Brown's supervised release.[3]

**AFFIRMED.**

---

**3.** Brown does not challenge the sentence of    imprisonment he received upon revocation.