[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13348
Non-Argument Calendar

_____

D.C. Docket No. 4:06-cr-00063-MW-CAS-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARCOLYNN GERMAINE WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(January 23, 2020)

Before WILSON, JORDAN and TJOFLAT, Circuit Judges.

PER CURIAM:

Marcolynn Germaine Williams appeals his 11-month sentence for violation of the terms of his supervised release.  On appeal, Williams challenges the District Court's finding that he (1) violated his supervision by traveling outside the Northern District of Florida without permission ("Violation 1"), and (2) violated his supervision when he committed a battery against his daughter ("Violation 7"). First, Williams argues that the Government did not prove, by a preponderance of the evidence, that he knowingly left the judicial district because it relied on inadmissible hearsay testimony of a Highway Patrol Officer who was not subject to cross-examination.  Williams argues that the testimony was unreliable because there was not a written report of the incident and the record does not reflect precisely how quickly Williams's probation officer contacted the Highway Patrol Officer after the Highway Patrol Officer spoke to Williams.  Second, Williams argues that the District Court erred in preventing him from cross-examining his daughter because the Government did not provide, and the District Court did not ask for, reasons why the opportunity should be denied.  Williams argues that, as a result, the District Court failed to perform the appropriate balancing test with regard to his confrontation rights.

We reject Williams's arguments and affirm.

I.

A district court may revoke supervised release and impose a prison sentence when it finds by a preponderance of the evidence that the defendant violated a condition of his supervised release.  18 U.S.C. § 3583(e)(3); *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010).  The preponderance standard is met if it is "more likely than not" that the defendant violated a condition of his supervised release.  *United States v. Cataldo*, 171 F.3d 1316, 1322 (11th Cir. 1999).

We review a district court's revocation of supervised release for an abuse of discretion.  *Cunningham*, 607 F.3d at 1266.  Under the abuse of discretion standard, we must affirm unless we find that the district court has made a clear error of judgment or has applied the wrong legal standard.  *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc).  We find a clear error of judgment only when we are left with a definite and firm conviction that a mistake has been committed.  *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005).

II.

First, we turn to Williams's argument that that the Government did not establish by a preponderance of the evidence that Williams had left the Northern

District of Florida in violation of his supervised release.  We disagree and hold that the Government met its burden.

The District Court found that Williams committed Violation 1 by traveling to Orlando, Florida on January 20, 2017.  Because Orlando is outside of the Northern District of Florida, this trip violated the condition of Williams's supervised release prohibiting him from traveling outside the jurisdiction without permission.  As a basis for its finding, the District Court references Probation Officer O'Steen's testimony that he spoke on the phone to a Florida Highway Patrol Officer who had detained Williams in a traffic stop.  According to the testimony, the Highway Patrol Officer stated to Probation Officer O'Steen that Williams said he was returning from Orlando at the time.  On appeal, Williams argues that it was error to admit the Highway Patrol Officer's statement as a basis for finding that Violation 1 occurred because the officer's statement was hearsay and was "unreliable."

Williams did not object at the revocation hearing to Parole Officer O'Steen's testimony.  Objections not raised in the district court are reviewed only for plain error.  *United States v. Moriarty*, 429 F.3d 1012, 1018 (11th Cir. 2005).  To establish plain error, a defendant must show that the District Court (1) made an error that was plain, and (2) that the error affected the defendant's substantial rights. *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 1777 (1993).

4

We will only exercise our discretion to recognize a forfeited error if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Moriarty*, 429 F.3d at 1019.

Defendants involved in revocation proceedings are entitled to certain minimal due process requirements. *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994). Among these minimal requirements is the right to confront and cross-examine adverse witnesses, "unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2); *see also Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 2604 (1972) (parole revocation context). In deciding whether to admit hearsay testimony, the court must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation. *United States v. Penn*, 721 F.2d 762, 764 (11th Cir. 1983). While there are not any boundaries for what constitutes sufficient good cause for denying confrontation, we have focused on the trustworthiness and reliability of the hearsay statements. *Id.* at 765. For example, statements close in time to the events at issue are more likely to be based on fresh recollection and carry a diminished likelihood of deliberate or conscious misrepresentation. *United States v. Reme*, 738 F.2d 1156, 1168 (11th Cir. 1984). Whether the hearsay declarant's statement is supported by other evidence in the record is also relevant in determining reliability. *Id.*

The District Court did not plainly err in finding that Probation Officer O'Steen's testimony regarding his conversation with the Highway Patrol Officer about Williams traveling outside the jurisdiction was admissible. The Court found that it could "rely on [the Highway Patrol Officer's statement]," even though it was hearsay, because it was made "absolutely contemporaneous almost with the stop."[1] The District Court also considered Violation 4, another violation for traveling outside the jurisdiction to Georgia without permission (a violation that Williams admitted to), to be corroborative of the Highway Patrol Officer's statements because it indicated a "pattern of behavior" of Williams traveling where he was not supposed to. Thus, the District Court considered the relevant evidence of reliability and found that the statement was reliable. We cannot say that this individualized consideration of the circumstances surrounding the hearsay statement constituted an obvious and clear error of law. *See United States v. Dortch*, 696 F.3d 1104, 1112 (11th Cir. 2012) (explaining that an error can only be "plain" if it is "one that is obvious and is clear under current law") (internal

---

[1] Williams argues in his reply brief that Parole Officer O'Steen's testimony, where O'Steen said that "[the Highway Patrol Officer] was actually with him at the point that I called [Florida Highway Patrol dispatch]," meant that the "him" that the Highway Patrol Officer was "with" at the time of the call was the *dispatcher*, not Williams. This is contrary to the Government's assumption that Parole Officer O'Steen's telephone conversation with the Highway Patrol Officer occurred while the officer "was still roadside with [Williams]." However, we need not resolve this potential ambiguity in Parole Officer O'Steen's account of the timing of the conversation in order to conclude that the District Court did not plainly err in finding that the statements were generally reliable enough to be admitted as evidence, because the timing was not the only factor indicating reliability.

quotations omitted); *see also Penn*, 721 F.2d at 765 ("[T]here can be no fixed rules on what would constitute good cause [for not allowing confrontation in a revocation hearing] in every case.")

Accordingly, because the District Court did not plainly err in admitting the Highway Patrol Officer's statement that Williams had left the jurisdiction to travel to Orlando, the District Court did not abuse its discretion in finding by a preponderance of the evidence that Williams had committed Violation 1.

### III.

Next, we turn to Williams's argument that the District Court erred in overruling his objection to the admission of videotaped testimony in which Williams's daughter stated that Williams had struck her twice with a closed fist because he was angry at her.  The District Court used this evidence as a basis for finding that Williams committed Violation 7, a battery, because it occurred while Williams was on supervised release.  Williams contends that, in admitting the evidence, the Court "did not balance the defendant's right to confront the adverse witness" because it did not require the Government to provide reasons in support of allowing the testimony.  The Government argues that the District Court's analysis of the videotaped testimony's reliability was sufficient to satisfy Williams's due process rights, and alternatively that any error would have been harmless because dismissal of Violation 7 would not have changed the sentence

imposed.  We agree that the District Court gave thorough consideration to a balancing of factors and properly admitted the testimony.  Therefore, it did not abuse its discretion in finding that Williams had committed Violation 7.

At the revocation hearing, the Government offered as evidence a "two-and-a-half-minute clip" of the video of the interview of Williams's daughter conducted by two police officers.  Williams objected to the District Court's consideration of the videotaped testimony based on "hearsay and reliability," suggesting that because the daughter had just been disciplined by Williams, the Court should have been skeptical of the reliability of her testimony because it was a situation where "the child can be upset with the parent."  The Court overruled Williams's objection, concluding that the videotaped testimony was sufficiently reliable to be entered into evidence, and on the basis of the video, found that Williams was guilty of Violation 7.

The District Court identified multiple grounds indicating that the daughter's testimony was reliable.  First, the Court concluded that her testimony did not contain any indication of "embellishment, exaggeration," or internal inconsistencies, and there were no "disparate views" on what had occurred. Additionally, the Court found that nothing in the testimony suggested that the interviewing officers were trying to "lead the witness" or that Williams's daughter was altering her testimony to please the officers.  Finally, the Court found that

Williams's obstruction of the officers' investigation of the battery by falsely telling the officers that his daughter was not at the house (Violation 9, to which Williams admitted) suggested that he committed the battery and was trying to hide it. The District Court found that the factors indicating that the testimony was reliable outweighed the fact that the daughter would not be cross-examined, and admitted the testimony based on that conclusion.

The District Court's consideration of whether to admit the videotaped testimony did not violate Williams's due process rights because it appropriately balanced his right to confront witnesses against him with the videotaped testimony's indicia of reliability, which provided good cause to admit the recorded testimony. *See Penn*, 721 F.2d at 765. Thus, the District Court did not err in admitting the testimony and did not abuse its discretion in crediting the daughter's statements and finding that Violation 7 had occurred.

**AFFIRMED.**